The defendants' initial response to the motion for reconsideration questions whether the Commission has authority to consider such a motion, and whether defendants' appeal to the N.C. Court of Appeals, filed the day after the motion, divests the Commission of jurisdiction. The Commission's I.C. Rule 702(1), providing that the time for appeal is tolled during the pendency of such post-Award motions, is authorized by N.C.G.S. § 1-279, which was specifically made applicable to the Commission's proceedings by Session Laws 1975, c. 391. The Commission has the duty and inherent authority to make its orders do substantial justice, and a motion for reconsideration, brought during the time allowed for appeal, has been recognized as an appropriate mechanism for doing so in at least one other quasi-judicial forum.Hogan v. Cone Mills Corp., 315 N.C. 127, 137-38, 337 S.E.2d 477
(1985); Utilities Commission v. Edmisten, 291 N.C. 575, 581-82,232 S.E.2d 177 (1977).
The finding in the initial opinion that plaintiff suffered no substantial change of condition following the Form 26 agreement is indeed inconsistent with the findings that plaintiff repeatedly underwent necessary surgery due to the compensable condition and was unable to work while undergoing this treatment and convalescence. A change in physical condition is "substantial", within the meaning of N.C.G.S. § 97-47, when it actually interrupts the plaintiff's ability to earn wages. Lucas v. BunnManufacturing Co., 90 N.C. App. 401, 404, 368 S.E.2d 386 (1988). Consequently, it is ORDERED that the prior Opinion of the Full Commission is VACATED, and the present one substituted.
Plaintiff has moved to reopen the evidence for additional records of plaintiff's medical condition and treatment in 1993, and defendant's have strenuously objected to putting additional evidence before the Full Commission outside of the full evidentiary process. Plaintiff's motion to reopen the evidence is DENIED, without prejudice to plaintiff's right to ask for an additional hearing, and the documents submitted with this motion have not been considered in the review of the issues in evidence before the Deputy Commissioner.
Defendants formally raised specific objections to the testimony of Dr. Baldwin, and the questions eliciting it, in the manner requiring a specific ruling by the Commission. SeeBallenger v. Burris Industries, 66 N.C. App. 556, 562,315 S.E.2d 700 (1984). Dr. Baldwin's opinions were based primarily on competent, credible evidence from which his conclusions might ultimately be drawn — particularly the subsuming one, that plaintiff's pain problems prohibited him from working a normal eight hour day — and consequently, the Deputy Commissioner's denial of the motion is SUSTAINED and the objections OVERRULED.
On the merits, the primary issue is whether the plaintiff's residual impairment, after maximum medical improvement of the conditions requiring the surgeries, was substantially greater. Defendants argue that it was not, and consequently that the plaintiff is barred from further benefits after that point because he accepted permanent partial disability benefits under the Form 26 agreement dated July 7, 1988. This agreement recited that he returned to work on that date, and the carrier reported on its Form 28B of July 14, 1988 that plaintiff was released "to return to light work 6/2/88". However, we conclude that plaintiff's ability to get and keep a job was substantially diminished by the progression of problems due to the severe anorrectal dysfunction resulting from nerve damage suffered during surgeries for his compensable back condition, even after the colostomy surgeries. These include the new problems because of the new problems the colostomy would present in the workplace setting (Depo. of Dr. Weeks, pp. 12-13; Depo. of Dr. Baldwin, pp. 51-52 and 89), the attendant risk of bleeding, infection and herniation (Depo. of Dr. Goco, pp. 23, 27, 32 43), and the necessity of catheterizing himself three or four times a day (Depo. of Goco, p. 16). By proof of these facts, together with his pre-existing pain and depression resulting from his serious back condition, inability to return to physically demanding prior employment, and lack of transferable skills, plaintiff proved that he was incapable of working, and that any job search would be futile at the close of the period covered by this evidence. Depo. of Dr. Baldwin, pp. 15, 28, 33-36 and 88. Concerning plaintiff's subjective complaints of pain, it is noted that he was found to be "well motivated" and credible by multiple providers who examined him independently over a period of years. See, e.g., Depo. of Goco, p. 22, Depo. of Dr. Camp, p. 11, Depo. of Dr. Baldwin, Exh. 2, p. 17 (concerning report of Drs. Homer and King) and pp. 35, 58-59, 76. Consequently, the plaintiff was entitled to temporary total disability benefits from the date of the change of condition through February 14, 1992, the date of the last evidence of his condition in this record. Depo. of Dr. Baldwin, p. 13; Russell v.Lowes Product Distribution, 108 N.C. App. 762, 765, 425 S.E.2d 454
(1993); Burwell v. Winn-Dixie Raleigh, 114 N.C. App. 69, 73-74,441 S.E.2d 145 (1994).
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding good ground to reconsider the evidence and amend the award, the Full Commission enters its Opinion and Award as follows:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. On December 13, 1984, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
2. As a result of his injury by accident, plaintiff has a twenty percent permanent partial disability of his back, for which he has received permanent partial disability compensation at the rate of $262.00 per week, for a period of 60 weeks.
* * * * * * * * * * *
Based upon all the competent credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. On December 13, 1984, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
2. As a result of his injury by accident on December 13, 1984, plaintiff had a laminectomy in 1985 with a vertebral body wedge disc resection to release pressure on the sacral nerve.
3. In March of 1987, as a result of his injury by accident on December 13, 1984, plaintiff had a surgical fushion of three discs to repair damage from his original surgery in the lower sacral vertebrae.
4. As a result of his injury by accident, plaintiff has a twenty percent permanent partial disability of his back, for which he received permanent partial disability compensation at the rate of $262.00 per week, for a period of 60 weeks beginning July 7, 1988. The Form 26 for these benefits, as approved by the Commission, stipulates that plaintiff returned to work on July 7, 1988.
5. As a result of plaintiff's back surgeries, which resulted from his injury by accident on December 13, 1984, plaintiff sustained damage to the nerves of the lower segment of the large intestines, and severe anorectal dysfunction. By March, 1988, plaintiff experienced difficulty "passing stool."
6. On December 19, 1988, plaintiff was seen by Landon E. Weeks, M.D., a gastroenterologist, in Winston-Salem, North Carolina, for his inability to have bowel movements. Plaintiff's condition was such that plaintiff had to either use a foreign object to open his rectum, or use extreme straining.
7. Dr. Weeks referred plaintiff to Marvin M. Schuster, M.D. at John Hopkins University School of Medicine due to Dr. Weeks' understanding that Dr. Schuster was an expert in plaintiff's problem. Subsequently, plaintiff was seen and treated by Dr. Schuster in Baltimore. Dr. Schuster confirmed by electromyographic testing that plaintiff was not getting sensory input from his lower bowel so that plaintiff could not respond with rectal sphincter relaxation.
8. Subsequently, as a result of his injury by accident on December 13, 1984 and resulting severe anorectal dysfunction, plaintiff was hospitalized from March 15, 1990 until March 18, 1990 for a left descending colostomy by Ismael R. Goco, M.D. As a result of plaintiff's colostomy, and pre-existing pain and depression due to his back condition, plaintiff was out of work and incapable of earning wages after March 15, 1990. Plaintiff's colostomy is permanent, enabling him to have bowel movements with less pain, although he may have occasional bleeding, is at risk for infection and herniation at the site, and must wear a colostomy bag.
9. Subsequent to plaintiff's hospitalization in March 1990, Dr. Goco saw plaintiff on eight occasions prior to hospitalizing him for pouchitis on July 31, 1990. Pouchitis is a painful abdominal condition caused by inflammation in the bypassed part of the large intestine from the point of the placement of the colostomy to the rectum, which forms a blind pouch. This condition is a recognized consequence and complication of a colostomy.
10. Plaintiff was hospitalized on July 31, 1990, and surgery was performed to remove the blind pouch. Subsequent to this surgery, plaintiff developed a fever and remained in the hospital until August 13, 1990. Following discharge, plaintiff was followed by Dr. Goco with complaints of cramps, suspicion of herniation, and necessity of catheterization to urinate.
11. In early 1991, plaintiff returned to Dr. Goco's office with continued complaints of pain at the exit site of the colostomy. Plaintiff had developed a small hernia, or peristomal hernia, at the exit site, but elected to defer treatment for the condition until after treatment by Dr. Shown for placement of a penile prosthesis. Plaintiff was hospitalized on September 12, 1991 and operated on by Dr. Gonzales to repair the peristomal hernia. Plaintiff was discharged on September 17, 1991 in good condition with instructions not to lift anything heavy. Plaintiff was hospitalized again on February 18, 1992 for repair of another small peristomal hernia at the exit site of the colostomy.
12. The exit site of plaintiff's colostomy may bleed occasionally, and is susceptible to infection and herniation.
13. As a result of back surgeries resulting from his injury by accident on December 13, 1984, plaintiff sustained loss of or permanent injury to the nerves to his lower segment of the large intestines, resulting in severe anorectal dysfunction or permanent injury to plaintiff's bowels, pain that constitutes a vocationally significant limiting factor, and depression, due to the pain, for which he has been medicated with Prozac since 1990.
14. Plaintiff suffered periods of total disability due to the progression of, and surgical treatment for, his compensable conditions on and after March 15, 1990, which constituted a material change of condition since the Form 26 agreement for permanent partial disability benefits dated July 7, 1988 and approved by the Commission on February 22, 1989.
15. Defendants have defended the present claim on substantial grounds and in good faith.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. By March 15, 1990 plaintiff had suffered a substantial change in condition since the prior award of compensation on the approved Form 26 agreement dated July 7, 1988 and approved February 22, 1989. N.C.G.S. § 97-47.
2. Plaintiff is entitled to temporary total disability compensation at the rate of $262.00 per week from March 15, 1990 and continuing until plaintiff returns to work or defendants obtain permission from the Industrial Commission to cease payment of compensation. N.C.G.S. § 97-29.
3. As a result of his injury by accident on December 13, 1984 and resulting surgeries, plaintiff is entitled to payment of all medical compensation expenses which have or may be incurred, for so long as such may reasonably be required to effect a cure, give relief, or lessen plaintiff's period of disability. N.C.G.S. § 97-25.
4. The plaintiff's attorney's fees on this appeal per N.C.G.S. § 97-88 must be determined in the Commission's discretion.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $262.00 per week, from July 31, 1990 and continuing until plaintiff returns to work or defendants obtain permission from the Industrial Commission to cease payment of temporary total disability compensation. Amounts which have accrued shall be paid to plaintiff in a lump sum, subject to the attorney fee approved in Paragraph 3.
2. Defendants shall pay all medical expenses which have been or may in the future be incurred by plaintiff as a result of his compensable injury on December 13, 1984, for such examinations, evaluations and treatments as may reasonably be required to effect a cure, or give relief, or tend to lessen plaintiff's period of disability, when bills for the same shall have been submitted through defendant-carrier to, and approved by the Commission.
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid by deduction from the accrued sum and payment directly to plaintiff's counsel of every fourth compensation check. Plaintiff's motion to tax attorney's fees to the defendants per N.C.G.S. § 97-88 is DENIED.
4. Defendants shall pay the costs, including an expert witness fee of $225.00 to Dr. Thomas Baldwin.
 S/ _________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ __________________ COY M. VANCE COMMISSIONER
S/ _________________ FORREST SHUFORD, II SPECIAL DEPUTY COMMISSIONER
JRW/tmd 12/5/94; 1/25/94